**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 10-cr-00509-REB-02

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2.    RAMONA CAMELIA FRICOSU,
    aka Ramona Smith

    Defendant.

---

**GOVERNMENT'S RESPONSE REGARDING
MS. FRICOSU'S MOTION REGARDING DNA SAMPLE
(Document 93)**

---

The United States of America, by United States Attorney John F. Walsh, and through Assistant United States Attorneys Patricia Davies and Jeremy Sibert, hereby responds to Ms. Fricosu's Motion Regarding DNA Sample ("Motion"). (Doc. 93).

**I.    Factual Background and Summary of Position**

On September 30, 2009, defendant Fricosu was indicted for bank fraud, wire fraud, money laundering, and making false statements to financial institutions. (Doc. 1). On October 6, 2010, an initial appearance was conducted regarding defendant Fricosu. (Doc. 10). Consistent with local practice, prior to her initial appearance, defendant Fricosu reported to the United States Marshal's Service for processing, including the taking of her fingerprints and collection of a DNA sample. Defendant Fricosu made no mention of the DNA sampling or other identification procedures during her initial appearance, and she was released on bond following her

initial appearance. (Doc. 10).

Months later, defendant's Motion requests that this Court order that a DNA sample previously obtained from her[1] and any information from it be destroyed, as unlawfully obtained under the Fourth Amendment. Defendant's Motion should be denied. The sampling occurred in conformity with Title 42, United States Code, Section 14135a. It is a "minimally intrusive" invasion of Ms. Fricosu's privacy interests properly done as part of an identification process, along with fingerprinting and other administrative procedures after her indictment in this case. As such, under relevant Constitutional precedents, defendant is not entitled to the relief sought.

## II.     The Relevant Statute

Section 3142(b) and (c)(1)(A) authorize the district court to require defendants to give DNA samples as a condition of pre-trial release, pursuant to 42 U.S.C. § 14135a. Section 14135a(a)(1)(A) provides in relevant part that:

> The Attorney General may, as prescribed by the Attorney General in regulation, collect DNA samples from individuals who are arrested, facing charges. . . The Attorney General may delegate this function within the Department of Justices as provide in section 510 of Title 28, and may also authorize and direct any other agency of the United States that arrests or detains individuals or supervises individuals facing charges to carry out any function and exercise any power of the Attorney General under this section.

Other provisions of § 14135a provide that the DNA sample collected shall be furnished

---

[1] The undersigned is informed and believes that -consistent with standard procedure - Ms. Fricosu's sample has already been destroyed.

to the FBI for analysis and inclusion of the results within the Combined DNA Index System ("CODIS").  "Through the use of short tandem repeat technology ("STR"), the Bureau analyzes the presence of various alleles located at 13 markers (or loci) on DNA present in the specimen.  These STR loci are found on so-called 'junk DNA' - that is - non-genic stretches of DNA not presently recognized as being responsible for trait coding and 'were purposely selected because they are not associated with any known physical or medical characteristics.'" *United States v. Pool*, 621 F.3d 1213, 1215 (9th Cir. 2010) (citation to legislative history omitted), *reh'g granted en banc*, 2011WL2151200 (9th Cir. June 2, 2011).  Thus, "[t]he regulations allow 'DNA samples generally to be collected, along with a subject's fingerprints, as part of the identification process, 'but they need not be if collection of DNA samples' would not be warranted or feasible.'" *Id*., at 1216.

### III.   The Statute Is Constitutional

Few courts have yet ruled on the constitutionality of Section 14135a, and en banc review has been granted as to the only appellate court decision, *United States v. Pool, supra*.   However, the government submits that the reasoning of *Pool* and other courts cited herein is persuasive authority.  Defendant relies almost entirely on *United States v. Mitchell*, 681 F.Supp.2d 597 (W.D. Pa 2009), which the government submits was wrongly decided.

In *United States v. Pool, supra*, defendant was charged with possessing and receiving child pornography.  He was arrested on the indictment and brought to court for arraignment.  He had no prior criminal history and entered his not guilty plea.  The

magistrate ordered that Pool be released on a $25,000 unsecured bond, conditioned on his compliance with pre-trial conditions, including that he provide a DNA sample. Pool objected; the court ordered briefing; after briefing and hearing, the court ordered Pool to submit a DNA sample, which order was reviewed and affirmed by the district court.

On appeal to the Ninth Circuit under 18 U.S.C. § 3145(c), the court surveyed Supreme Court and Ninth Circuit precedent in concluding that the statute is constitutional. It began its analysis by noting that compulsory extraction for DNA sampling implicates the Fourth Amendment and is a "search." *United States v. Pool*, 621 F.3d at 1217. Thus, it reasoned, because "the statute's compulsion of a DNA sample does not contemplate the issue of a search warrant, the provision will pass constitutional muster only if it 'falls within certain established and well-defined exceptions to the warrant clause.'" *Id*. at 1217-18. The possible exceptions it noted were "the special needs test" and "totality of circumstances."[2]

In *Pool*, the Ninth Circuit reflected on the proceedings below, noting the lower court's conclusion that:

> [T]he "judicial or grand jury finding of probable cause within a criminal proceeding is a watershed event which should be viewed differently from mere prejudicial involvement gathering of evidence. After such a judicial finding, a defendant's liberty may be greatly restricted, even denied. As part of his pretrial

---

[2]The government addresses the totality of circumstances here as appropriate under Tenth Circuit authority, *Banks v. United States*, 490 F.3d 1178, 1183-84 (10th Cir. 2007), but notes the Tenth Circuit analyzed the original statute and found it constitutional under the "special needs test." *United States v. Kimler*, 335 F.3d 1132, 1146 (10th Cir. 2003) (reviewing the DNA Analysis Backlog Elimination Act of 2000 ("2000 DNA Act")).

release, defendant may be deprived of his very liberty; he can be subjected to electronic monitoring; he may be ordered to obey a mandatory curfew. . . . These conditions are almost identical to those conditions which can be imposed on a probationer or parolee for whom a DNA testing requirement has been found appropriate under a totality of circumstances standard. The court finds that an up-front requirement for finding probable cause that the defendant has committed the charged felony places the issue much more closely with those cases utilizing a totality of the circumstances standard.

*Id.* at 1216-17.

### A.   The Totality of Circumstances Test

The Supreme Court has stated that "under our general Fourth Amendment approach" we "examin[e] the totality of circumstances to determine whether a search is reasonable within the meaning of the Fourth Amendment." "Whether a search is reasonable 'is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006).

#### 1.   The defendant's interest

Precedent establishes that the "physical intrusion required to take a DNA sample is minimal." *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 625 (1989) ("the intrusion occasioned by a blood test is not significant, since such 'tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted in minimal and that for most people

5

the procedures involves virtually no risk, trauma or pain.'").

Some defendants have claimed that the information potentially available from DNA analysis elevates their interest substantially, but this argument has been rejected. *Pool*, 621 F.3d 1221-22 (noting that particular methodology under Act using "junk DNA" allowed proper identification of subjects but not medical or other information and that potential for government abuse does not warrant a finding of unconstitutionality where statute on its face does not allow for improper use and in fact provides protections against such use); *Williamson v. State*, 993 A.2d 626, 638-39 (Md. 2010) (same analysis regarding state DNA collection statute); *Haskell v. Brown*, 677 F.Supp.2d 1187, 1196-98 (N.D. Cal. 2009) (discussing prior cases finding that CA state DNA collection statute used methods to protect privacy of individuals while using DNA for identification purposes, and denying motion to enjoin).

Courts have likened obtaining DNA samples and analysis as another means of identification, like fingerprinting, with minimally intrusive Fourth Amendment implications. *Haskell*, 677 F.Supp.2d at 1199.

        2.      The government's interest in identification.

Weighed against the defendant's interest, courts have found the government's interest in identification through DNA to be legitimate and significant. As stated in *Pool:* "The government's interest in DNA samples for law enforcement purposes are

> well established. It is the most accurate means of identification available.
> Furthermore, unlike fingerprint evidence that requires that the perpetrator leave a discernible fingerprint at the scene of a crime, it is much more difficult for a

perpetrator not to leave some DNA evidence at the scene of a crime. We have recognized the government's interest as 'undeniably compelling' and 'monumental.'"

*Pool*, 621 F.3d at 1222-23 (citation omitted). "If not at the time that a person is arrested, certainly once there has been a determination of probable cause to believe that an individual has committed a federal felony, the individual no longer has any 'right' or legitimate expectation of keeping his or her identity from the government." *Id*. at 1223. *See also Haskell,* 677 F.Supp.2d at 1198-99 ("The government has a strong interest in identifying arrestees).

Thus, under the precedents above and the "totality of circumstances," the government submits that the statute is constitutional.

## IV.   Conclusion

For the foregoing reasons, the United States respectfully requests that this Court deny Ms. Fricosu's Motion Regarding DNA Sample (Doc. 93).

Dated this 5th day of July, 2011.

                JOHN F. WALSH
                United States Attorney


                By: s/Patricia Davies
                PATRICIA DAVIES

                By: s/Jeremy Sibert
                JEREMY SIBERT
                Assistant United States Attorneys
                United States Attorney's Office
                1225 17th Street, Suite 700
                Denver, CO 80202
                Phone: 303/454-0100
                Fax: 303/454-0403
                patricia.davies@usdoj.gov
                jeremy.sibert@usdoj.gov
                Attorneys for Government

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of July, 2011, I electronically filed the foregoing **GOVERNMENT'S RESPONSE REGARDING MS. FRICOSU'S MOTION REGARDING DNA SAMPLE (Document 93)** with the clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Mark Johnson
mark.johnson68@gmail.com

Philip L. Dubois
dubois@dubois.com

Tonya Andrews
Tonya.Andrews@usdoj.gov

Martha Paluch
Martha.Paluch@usdoj.gov

By: s/ Veronica Ortiz
VERONICA ORTIZ
Legal Assistant
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0406
E-mail: Veronica.Ortiz@usdoj.gov