IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Judge Robert E. Blackburn

Criminal Case No. **10-cr-00509-REB**

UNITED STATES OF AMERICA, Plaintiff

v.

**SCOTT ANTHONY WHATCOTT**, et al., Defendants.

---

### MS. FRICOSU'S RESPONSE TO DOCUMENT 111

---

Ms. Fricosu replies as follows to Government's APPLICATION UNDER THE ALL WRITS ACT REQUIRING DEFENDANT FRICOSU TO ASSIST IN THE EXECUTION OF PREVIOUSLY ISSUED SEARCH WARRANTS, *i.e.*, document 111.

1. The government writes that the court "commanded" the government to search the computer and that Ms. Fricosu is frustrating the government's ability to "comply" with the court's search warrant, as if it were at the court's instance that the computer was seized and searched. In truth, the court cares not whether the government sought the warrant or ever executed it. The only command in the warrant is that it be executed in the daytime not later than the 3 September 2010.

2. The government asserts that the All Writs Act ("the Act") is a residual source of authority to issue writs that are not otherwise covered by statute, quoting *Pennsylvania Bureau of Correction v. United States Marshals Service,* 474 U.S. 34, 43 (1985). If so, the Act cannot be

used as the government now seeks to use it, because searches <u>are</u> covered by statutes that provide for search warrants.  *See, e.g.*, 18 U.S.C. §3101 *et seq.* (searches and seizures generally); 12 U.S.C. §3406 (bank records); and 18 U.S.C. §2103 (stored electronic communications).  The Act does not give the court the authority to force an accused person to assist in her own prosecution.  The Act has never been used as the government now seeks to use it.  With the possible exception of *United States v. New York Telephone Co.*, 434 U.S. 159 (1977), which involved an order for the installation of a pen register, counsel can find no case in which the Act was ever used in support of a search warrant.

   3.  The historical and revision notes to the Act contain this paragraph:  "The revised section extends the power to issue writs in aid of jurisdiction, to all courts established by Act of Congress, thus making explicit the right to exercise powers implied from the creation of such courts."  The power to force Ms. Fricosu to assist in her own prosecution by decrypting a hard drive is not implied from the creation of the district court and is not within the court's jurisdiction.

   4.  The government says that because the Act allows courts to order telephone companies to install pen registers, *United States v. New York Telephone Co.*, *supra*, it also allows the court to order Ms. Fricosu to decrypt a hard drive that the government alleges is hers so that the government may use the content of the drive against Ms. Fricosu.  It doesn't.  The former holding does not compel the latter conclusion.

   5.  Citing *Fisher v. United States*, 425 U.S. 391 (1976), the government asserts that Ms. Fricosu's involuntary decryption of the hard drive "adds little or nothing to the sum total of the Government's information" because "the existence and location of the papers are a foregone

conclusion." The existence and location of incriminating evidence on the encrypted drive are not a foregone conclusion. More importantly, the government does not know that the computer belongs to or was used by Ms. Fricosu or that she had or has access to the drive. (The government does not mention that there was dust on the computer when it was seized.) If Ms. Fricosu were forced to decrypt the drive, and assuming that she were able to do so, the sum total of the government's information would be substantially increased. Further, central to the *Fisher* holding was the fact that the government sought information from the target's lawyers and not from the target himself. "The Court has held repeatedly that the Fifth Amendment is limited to prohibiting the use of 'physical or moral compulsion' exerted on the person asserting the privilege," *id* at 397, quoting *Perlman v. United States*, 247 U.S. 7, 15 (1918). "It is extortion of information from the accused himself that offends our sense of justice." Id at 398, quoting *Couch v. United States*, 409 U.S. 392, 328 (1973). Finally, "[w]hether the Fifth Amendment would shield the taxpayer from producing his own tax records in his possession is a question not involved here; for the papers demanded here are not his 'private papers,'"*Fisher, supra*, at 414. *Fisher* did not resolve the question now before the court.

  6. Also citing *Fisher*, the government argues that Ms. Fricosu would be forced only to provide "the key to a strongbox" and not the combination. But the only key to the encrypted drive is, assuming that she possesses it, in Ms. Fricosu's head, not on a key chain. This is a critical distinction, and this is why the court's decision is of national interest: in our new digital world, will the compelled decryption of encrypted media be analogous to the compelled disclosure of a safe's combination? Or to the compelled surrender of the safe's key? If the latter, the meaning of "search warrant" will be stretched and the rights to privacy and against self-incrimination shrunk.

A search warrant has never been held to require an accused person to decrypt encrypted media of any kind, whether the medium was paper, tattoo, rock engraving, or electronic. If agents execute a search warrant and find, say, a diary handwritten in code, could the target be compelled to decode, *i.e.,* decrypt, the diary?

7. Technological advances, even if not foreseen by the authors of the Bill of Rights, must not erode fundamental constitutional principles. The Fifth-Amendment protection against compelled self-incrimination "must be accorded liberal construction in favor of the right it was intended to secure," *Hoffman v. United States*, 341 U.S. 479, 486 (1951), not a narrower construction every time a new technology frustrates the government's intentions. "If it be thought that the privilege is outmoded in the conditions of this modern age, then the thing to do is to take it out of the Constitution, not to whittle it down by the subtle encroachments of judicial opinion." *Maffie v. United States*, 209 F.2d 225, 227 (1st Cir. 1954). Likewise the Fourth-Amendment prohibition against unreasonable searches; *see, e.g., Kyllo v. United States*, 533 U.S. 27, 34 (2001) (police use of thermal imaging device).

8. The government claims that "act of production immunity" will eliminate any Fifth Amendment problems. Because the government has not disclosed its proposed immunity order, it is not clear how Ms. Fricosu's Fifth-Amendment rights would be protected. Whatever the nature and extent of the government's suggested immunity order, the instant case is more congruent with *United States v. Hubbell*, 530 U.S. 27 (2000), than the government admits. The government is unable to describe the computer files it seeks with reasonable particularity, *id* at 30, and only use immunity – preventing the government's use of incriminating information derived directly or indirectly from the compelled decryption of the hard drive – will meet Fifth Amendment

requirements, *id* at 38.  And as in *Hubbell*, to force Ms. Fricosu to decrypt the hard drive's contents would, as the government hopes, "furnish a link in the chain of evidence needed to prosecute" Ms. Fricosu.  *Id* at 38.

   9.  The government's argument about the applicability of *In re Grand Jury Subpoena to Sebastien Boucher*, No. 2:06-mj-91 (D.Vt. 19 Feb 2009), is well-countered in the brief of *amicus* Electronic Frontier Foundation, whose assistance the court is urged to accept and whose thoughtful remarks Ms. Fricosu need not repeat here.  Ms. Fricosu need add only that the All-Writs Act played no part in *Boucher*.

## CONCLUSION

   The government's motion raises Fourth and Fifth Amendment issues.  Even assuming the validity of the search warrant, which validity Ms. Fricosu does not concede and may be the subject of a separate motion, the warrant <u>permits</u> the government to search the hard drive, and the government has done so; the warrant <u>requires</u> nothing of Ms. Fricosu or, for that matter, of the government.  The government asks the court to find the warrant to require that Ms. Fricosu decrypt the hard drive, meaning that the government asks the court to order an unreasonable search.  The government similarly seeks a novel interpretation of the Fifth Amendment's self-incrimination provision, asking the court to compel Ms. Fricosu to shoulder part of the government's load, *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 55 (1964).  And the All-Writs Act has never been used, and was never intended to be used, as the government now seeks to use it.

   Respectfully submitted on July 8, 2011,

_____/s_____
Philip L. Dubois
Lawyer for Ramona Fricosu
Philip L. Dubois, P.C.
320 S. Cascade Ave., Ste B
Colorado Springs, CO 80903-3832
719-635-4848
fax 719-635-2222
email dubois@dubois.com

## CERTIFICATE OF SERVICE

Ms. Fricosu's Response To Document 111 was served by means of the court's electronic case management system on July 8, 2011. The signed original is preserved at counsel's office.

_____/s_____